Number 181750 Ricky Patton et al. v. Barry Johnson Good morning, your honors. May it please the court, my name is Samuel Zerrier. I represent the defendant, Barry Johnson. I'd ask the court's permission please for three minutes of rebuttal. You may. Thank you. This case is part of a series of litigations. There's a complex history, but the issue before this court is the following basic question. Whether the Rhode Island District Court's decision or judgment to deny my client, Barry Johnson's motion to compel arbitration was lawful, or the District Court's sole authority was a 2016 Texas Arbitrators Award in a case involving a co-defendant, Stephen Johnson. We offer four arguments against that. The first argument is that the District Court's decision was self-contradictory on the question of who decides the issue of arbitrability. Is it the judge on the one hand or the arbitrator on the other? What's our standard of review with the District Court's decision, Mr. Zerrier? It is basically asserting that the court made an error of law. Yes, so our standard of review was de novo. Isn't that correct? With regard to legal issues. So the District Court's reasoning isn't essential to the result. If we think the result is right, the District Court's reasoning, it isn't essential. We can affirm on any reason made manifest by the record. That is correct, Your Honor. Our second point is that the District Court's application of collateral estoppel was not correct under Texas law, in particular with the definition of prudity. Yes, but I've got some questions about your suggestion we should apply Texas law. In addition to the arguments made by the parties as to whether Rhode Island law should apply in this diversity case pending in a Rhode Island District Court, I read the memorandum which was filed on behalf of your client with the magistrate judge. That memorandum specifically invited the magistrate judge to consider and decide the issue of preclusion under Rhode Island collateral estoppel principles. That's what Magistrate Judge Sullivan did. There were objections to her reporting recommendation. Those objections did not include an objection to her use of Rhode Island law. So how, in view of that invitation and the lack of any objection to the R&R, can you now argue to us that Texas collateral estoppel law should control? First of all, what the magistrate judge said is that she wasn't sure what law applied, but she was going to apply Rhode Island law. Why? I thought she said because the parties asked her to. Yes. She said because that's what the parties presented to her in their briefs. That's how one asks. So how do you answer Judge Sullivan's question? Do you now want us to apply a totally different body of law than you asked the lower court to apply? In our memorandum in support of our objections to the reporting recommendation, we briefed the issue of Texas law. That's the first point. And I can get the reference if the court needs it. Did you do that just in case the magistrate judge did not follow your sort of joint agreement to apply Rhode Island law? Number one, maybe I'm missing something, but there seems to have been an Rhode Island. So I don't understand why you were briefing Texas law, and I assume it was not in repudiation of an agreement you had made, and therefore I assume the only reason for doing that would have been if the magistrate judge refused to accept the agreement. Your Honor, I picked up this case after the argument before the magistrate, and so I did not attend it. But when I read the attorney representation agreement, I read paragraph 11, which says this agreement will be interpreted under Texas law. But that's not the relevant point. The relevant point is what was said to the magistrate judge, and whether you came late or early, you're stuck with the representations that were made to the lower court. Okay. Well, as I said, I wasn't present at the argument, but I don't have evidence. Suppose we were to conclude you're stuck with Rhode Island law. As I understand it, you make no argument that Rhode Island law comes out differently than the district court concluded. That's correct, Your Honor, but with regard to privity. I will say, however, that I didn't brief this. No, no, with regard also to the question of whether an unconfirmed Arvill award can have collateral stop-loss. Exactly. I was going to go there, Your Honor, because if you look at the briefs before the magistrate judge, there's a citation to a case called Foster Gloucester, and if you use Rhode Island law with regard to confirmation, then we would say that applies and that the issue of confirmation was a mistake. Okay, but you didn't argue that to us, did you? No, I didn't. And in any event, all that Foster Gloucester says is that the issue is open in Rhode Island. It doesn't decide it. It doesn't foreclose it. I thought Rhode Island and Patent Note said that an unconfirmed Arvill award cannot have collateral stop-loss. As I said, I read Foster Gloucester to say... No, I'm not talking about Foster Gloucester, I'm talking about Patent Note. About which case in fact? Patent Note, I think it's called, or Panatone, I can't remember exactly the name. I must confess that I didn't follow that through because I focused on... But that's just to the point that you did not make any argument to us that she got Rhode Island collateral stop-loss law wrong. That's right. So it would follow that if we were to conclude that we can't apply Texas law here of collateral stop-loss because it wasn't argued to the district court or the magistrate judge, that therefore Rhode Island law applies. You have no arguments against what she did. We definitely argued it to the district court as part of our appeal. You have no arguments on appeal as to how she erred in the application of Rhode Island collateral stop-loss. Is that right? Well, as I said, we argued it to Judge Smith. We did not argue it to Magistrate Judge Sullivan. One last time. To the Court of Appeals. You have made no arguments to us that insofar as Rhode Island collateral stop-loss law applies, the district court erred in its application, or the magistrate judge erred in its application of it. I agree, Your Honor. Okay. Our third point is that the Dallas County Court of Law No. 1's decision on the special appearance, lack of personal jurisdiction under the Texas rules, amounted to a decision that the arbitration clauses were enforceable. You look at its analysis, you look at the briefs before it, that in effect decided the issue, which becomes binding under collateral estoppel against Mr. Patton. And we've talked about confirmation. What was that third point again? I'm not sure I followed. Are you arguing that the Texas court decision precluded the arbitrator's finding of arbitrability because the issue of arbitrability was briefed in the Texas court? The Texas court considered the issue in our reading of whether the arbitration clauses were enforceable. We're saying that it... What Judge Smith said in his decision that he had read all of the papers from the Texas court and was unable to find anything in the Texas court, and what the Texas court said that would justify a conclusion that the Texas court decided the issue of arbitrability I went and looked, or had my law clerk look, at those same papers and found that although the issue of arbitrability was briefed to the Texas court, its decision does not refer to that briefing or that issue. So what specifically in the Texas court's decision do you think decided the issue of arbitrability? I believe the court is referring to Magistrate Judge Sullivan's conclusion. No, I'm not referring to Magistrate Judge Sullivan's conclusion. I'm referring to something... Well, in this case, since Judge Smith adopted Judge Sullivan's report and recommendation, it's all the same. It's the district court's. Yes. What Judge Benson did was issued an order saying that special appearance is denied and enlisted five or six documents on which the court based its decision, including a series of memoranda and letters. We then, in our brief, quoted language from those memoranda and letters. In one of them, the lawyer for Mr. Patton says, based on the oral argument here, it's clear that the only basis for jurisdiction for my client is this arbitration clause. He didn't sign it and therefore there's no jurisdiction. Notwithstanding that, the court found that there was jurisdiction, which means that based on the admission of Mr. Patton's lawyer, that the only basis for that could be that the arbitration clauses were enforceable. Either that or the Texas court disagreed with the lawyer that that was the only basis for jurisdiction. I mean, you had a contract, as you pointed out, where Texas was in place of performance. So, you know, there seemed to me plenty of other obvious bases for Texas jurisdiction. I don't have a crystal ball and I can't read into a non-explicit decision what was in the mind of the Texas judges. Certainly nothing in the decision of the Texas court that compels or even strongly suggests the conclusion that they were deciding the case. There would certainly be a sufficient basis for what the court decided and based on the briefing that the other party had, we viewed it as a necessary condition. I would like to talk a little bit more about our first appeal point, which hasn't raised any questions, on the issue of arbitrability or who should decide this case. But just so I understand, that issue is irrelevant if the collateral estoppel analysis by the magistrate's last district court is correct. Well, this is how we view it, Your Honor. We think that if the magistrate, if the arbitrator had the authority to decide that issue, if arbitrability was properly before him, then it follows that arbitrability should not have been decided by the Rhode Island District Court. Instead, it should have been decided by another arbitrator. This is the analysis from the... That's just, I think, if I'm following, that's just saying it doesn't have collateral estoppel effect. Right. So, my question is, I don't, this is sort of an order of operations. There is an unappealed arbitration decision. Right? Just, it's out there. There is a claim that it has collateral estoppel effect. There's a ruling in federal court that it does have collateral estoppel effect based on Rhode Island collateral estoppel principles. You make no argument on appeal that that collateral estoppel analysis is in error insofar as Rhode Island law applies. Why isn't that just the end of the matter? How do we then get to the whole point of collateral estoppel effect, I thought, is that we don't then inquire into the merits of the underlying judgment. And here that, quote, judgment is the unconfirmed arbitral award, which has been held to have collateral estoppel effect by a district court on grounds you don't challenge on appeal. So, I don't see why we care whether it was rightly decided or wrongly decided by the arbitrator. We believe the arbitrator in Texas exceeded his authority under Section 284. No, I know you believe that. I'm not asking why you get to argue it if collateral estoppel applies. Well, the, an arbitration award is valid if the arbitrator acted within his authority. And the arbitration award, in our opinion, is not valid if the arbitrator exceeded his authority. But that doesn't answer Judge Bowen's question. See, I think what I need is if there's a case that suggests that there's an exception to collateral estoppel principles for unconfirmed arbitral awards in circumstances in which the arbitral award was, you know, made without authority. But I haven't come across anything that suggests that. I didn't see you cite anything like that in your briefing. Yeah, what we did is we briefed the issue of arbitration awards that have not been held valid because they exceeded the arbitrator's authority, which is what we think happened here. Thank you, Your Honor. Good morning. May I please recall my name is Matthew Dawson. I represent Ricky Patton and Kathleen Marquand on this matter. If you had occasion to review the transcript, I don't know if you would, of the lower court. I didn't have much to say then. I don't have much to say now. I think the court's points are well taken. At the end of the day, which is really not something I want to argue now, a lot of the collateral estoppel that was adopted in Rhode Island, and I was there for that argument, and I briefed on behalf of the defendant. It was a short hearing, and the court seized upon it. We are here today with a very narrow focus of reviewing that very tight and well-reasoned decision, recommendation I should say, from Magistrate Sullivan, which sets out the path of this case, which obviously the record before you now is somewhat convoluted, which I would suggest is due to a Herculean effort on the part of the appellant here to avoid the discharge of justice in this matter. However, that decision is correct in every way imaginable. There was no arbitration in this case. Well, not correct in every way imaginable, because to begin with, there's a procedural problem, and I'd like your thinking on it. The magistrate judge treated this motion to and therefore filed a report and recommendation with the district court. She got it exactly backwards and should have filed, we've held that such motions are nondispositive, and she should have filed an order with the district court, not a report and recommendation. But what do we do with that procedural problem? Isn't it a functional equivalent? If she had filed an order, wouldn't we be right here again? Yeah, maybe, because it's been over a review, I mean, this case turns on questions of law, so it may be harmless, it may make no difference. But when you say that the lower court did everything absolutely correct, I wanted to at least get it all right. Just since you're on that issue whether it did it all right, as I understand Rhode Island law, I don't read Foster Glossary to make clear that an unconfirmed arbitral award is capable of having collateral side effect. Again, at the time in the lower court, it was not briefed or it wasn't really an issue, the fact that it was unconfirmed. That issue wasn't rated below in the briefing papers? It wasn't argued, I don't recall whether or not it was. The magistrate judge seemed to think it was an issue because she expressly addresses the issue of how to treat unconfirmed arbitral awards. Correct, correct. And then she bases it on Foster Glossary, which I don't think says that because, if anything, it seems to me to read to say the opposite. That unconfirmed arbitral award ripened into a confirmed one at some point after the superior court ruled there. But prior to that time, it was unconfirmed and the opinion there suggests that the board was not bound by the arbitral award during the period where it was unconfirmed. I follow the court's reasoning on that, but obviously it's been confirmed at this point, both in Texas and to a degree here. This arbitral award has been confirmed? Well, I know it was denied, as you know, it was the motion to compel, this has been somehow... The arbitral award itself was never confirmed. No, it wasn't confirmed, but the motion to compel arbitration was an idea. That matter was pending in the Fifth Circuit, exactly the same as this one is. In addition to the notion that, although it may have been unconfirmed, I would respectfully suggest sound decision on our part, just in terms of the travel of the case and the manner in which it gets before, in that the arbitration, the arbitrator's decision was legally sound. The arbitrator's, and I don't want to cut against myself here because I'm arguing collateral estoppel, but the arbitrator's decision is correct. There is no arbitration clause in this case. The man never signed it, there is no agreement, and that's been the finding throughout. And for whatever reason, the appellant in this case... But that raises the question of, is an arbitrator the proper entity to decide that issue? He agreed to it. He agreed that they would go to the arbitrator. At the time they had the arbitration, he forced the arbitration. They went to the arbitrator. The arbitrator made a decision. You're not entitled to arbitration, and now he has to live with that. I know it hasn't been confirmed, but nobody asked the court to confirm it. I'm either side. Yeah, but you're trying to use it for collateral estoppel effect, so that's what I thought Rhode Island's courts have suggested, which is if you want to use it for that effect, you better get it confirmed. I guess all I can do is, without having to be honest with you, the facts are forced on the top of my head. This is certainly factually distinguishable. This arbitration was, I'm going to say, a slam dunk. This man never agreed to arbitrate this. We can't come here. The arbitration, the GM's arbitrator heard it, made the correct decision, and now they seek to re-litigate both here in Rhode Island and in Texas. Mr. Dawson, there are two separate issues here. One is the issue of arbitrability. There are circumstances in which the arbitrator is the correct party to decide arbitrability. One of those circumstances is when the parties to the agreement that contains the arbitration provision agree to that. The contracting parties agree to it. There's a basis for arguing that that's what happened here, particularly because of the representations that were made before the arbitrator. But then there's a separate question that even though you get the arbitral award, does that award require judicial confirmation before you can proceed to use it for collateral estoppel effect in Rhode Island? That's a separate question. It doesn't depend on the assumption of jurisdiction by the arbitrator, because if collateral estoppel applies, it applies to wrong decisions as much as it applies to right decisions. There is a question under Forster Gloucester as to whether an unconfirmed award can be given collateral estoppel effect. We did brief that issue. I know that. And there's also a question as to whether that issue has been weighed because the appellant in his briefing here hasn't challenged the district court's conclusions or findings under Rhode Island collateral estoppel law. So it seems to me those are the two issues on which this appeal has to turn. Can I just throw one more, which you may have nothing to say about, which is fine? I'm sure I can come up with something. In the magistrate judge's opinion, it says that the parties asked her to rely on Rhode Island law and First Circuit law. And one thing I'm not entirely clear about is whether this issue is a question ultimately of federal common law or is a question of state collateral estoppel law, full stop. Certainly when you have a confirmed arbitral award given 1738 and full faith and credit for judgments, there's no option but to do what state law does. But when you have an unconfirmed arbitral award, that statute doesn't govern. So the preclusion principles we're applying, I assume, are just federal common law preclusion. And it's not clear to me under Erie that it's substantive rather than procedural. So I'm not even quite sure why the question of whether an unconfirmed arbitral award should or should not be given collateral estoppel effect is something that a federal court has to base on Rhode Island collateral estoppel principles. I think in my brief, I'll be frank with you. I was thinking First Circuit. I was thinking federal law. I was not thinking... Not thinking Rhode Island law. I was not thinking Rhode Island law. I was in district court in Rhode Island. I'm here in First Circuit court in Boston. I was not thinking Rhode Island law. And I don't think my brother was either. And possibly we both made an error in that instance. I'm not sure. But I'm not sure right now. I'll know in a few minutes. I would suggest to you that the collateral estoppel, no matter which law applies, and I know we've talked about, you cited another case in addition to Forster. No matter which law applies, collateral estoppel to this judgment, to this arbitrator's decision, should apply in either context. Certainly in the federal context. And that's my belief in Rhode Island as well. And I obviously read the Forster matter when I did the lower court argument months ago. I cannot recall. But I recall it being factually distinguishable. Certainly factually distinguishable to this situation where the part of the appellant or defendant is numerous occasions in many venues trying to get this arbitration award and being told no, no, no, and just can't take no for an answer. I don't think it's a close call. I think it really doesn't apply to collateral estoppel. I understand that. But I just don't see where either under any reading of collateral estoppel, federal or state, that it wouldn't apply in this matter. And if there's any other questions, I'll conclude. Thank you. First of all, I'd like to acknowledge Judge Sully that you were correct about what the magistrate judge said. She said that Barry Johnson asked her to apply Rhode Island First Circuit law. With regard to whether we raised it... Thank you, Mr. Joy. Well, just telling the truth here. With regard to whether we raised it before Judge Smith after losing before magistrate Judge Sullivan, you can see that in the appendix at page 401. Finally, just to pick up on Judge Barron's point about the federal issue of confirmation, at page 25 in our brief we cite an interesting footnote from a case called Wolf v. Gruntal which talks about the issue of 28 U.S.C. 1738. And we go on to brief that question. And there is authority from that footnote and also from some circuits, but admittedly not all circuits, that an unconfirmed arbitration award should not have... Those are all cases in which there is a federal interest, but I've come across no case that suggests that it would make sense under federal collateral estoppel common law principles when 1738 is not governing for us nonetheless to conclude that when there's no federal interest, there's only a state interest because it's a state claim, we should not give effect to it. Now maybe there's a question whether we should give effect to it if the state itself wouldn't give effect to it, but you don't make that argument. So I think we have to assume the state would give effect to it, and if you're briefing the federal issue, the only authority you've got for us to disregard giving it collateral estoppel effect as a matter of federal common law preclusion principles, the only argument that you make are based on cases in which there is a federal interest, like a Section 1983 claim that would be estopped or a 10b-5 claim that would be estopped, which there might be a federal reason not to give it collateral estoppel effect, but there's no such interest here. I went looking for that kind of case, Your Honor, and I'll admit I couldn't find it either. But I will say this. I think if you... Common law allows this Court some room to make decisions based on common sense, and what we have here is an effort to use collateral estoppel, which is supposed to be used to conserve resources, to shut down an arbitration and have a full trial on the merits, which is going to do the exact opposite thing. And if you look at such decisions as Bond or Trump, the whole history of collateral estoppel in the United States Supreme Court, and let me brief this as a background point, this is not what collateral estoppel was intended to do. It was not intended to remove an arbitration. Thank you, Your Honor. Thank you.